PHILIP R. SELLINGER
United States Attorney
BROOKS E. DOYNE
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
Tel. (973) 297-4390
Email brooks.doyne@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDITH HENRY,<br>*Plaintiff,*<br>v.<br>ESSEX COUNTY, *et al.*,<br>*Defendants.* | HON. KATHARINE S. HAYDEN<br>*Civil Action No.* 20-11159 (KSH)(CLW) |

**MEMORANDUM OF LAW IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS THE CLAIMS AGAINST THEM IN PLAINTIFF'S THIRD AMENDED COMPLAINT**

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
*Attorney for Federal Defendants*

BROOKS E. DOYNE
Assistant United States Attorney

## TABLE OF CONTENTS

Preliminary Statement ........................................ 1

Background ........................................ 2

I. Relevant Allegations in the Third Amended Complaint ........................................ 2

II. Procedural History ........................................ 5

Argument ........................................ 5

I. The Court Lacks Jurisdiction Over Henry's Tort Claims and Official-Capacity Claims ........................................ 5

II. The Federal Defendants Are Entitled To Qualified Immunity ........................................ 8

1. Henry Has Failed to State a Claim Under 42 U.S.C. § 1983, § 1985, and the NJCRA ........................................ 9

2. Henry Has Failed to State a Constitutional Violation ........................................ 14

III. The Court Should Not Extend *Bivens* to the Constitutional Claims Asserted Against the Federal Defendants in the Third Amended Complaint ........................................ 18

A. Henry's Claims Present a New Context ........................................ 20

B. Special Factors Counsel Hesitation Against Extending *Bivens* to Henry's Claims ........................................ 23

1. Alternative Remedial Processes ........................................ 23

2. Additional Factors Counseling Hesitation ........................................ 27

Conclusion ........................................ 29

# TABLE OF AUTHORITIES

**Cases**

*A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*,
372 F.3d 572 (3d Cir. 2004) ........ 14

*Andela v. Admin. Off. of U.S., Cts.*, 569 F. App'x 80 (3d Cir. 2014) ........ 13

*Argueta v. U.S. Immigration & Customs, Enf't*, 643 F.3d 60 (3d Cir. 2011) ........ 9, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 9, 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 9

*Beneficial Consumer Discount Co. v. Poltonowicz*,
47 F.3d 91 (3d Cir. 1995) ........ 6

*Bivens v. Six Unknown Fed. Narcotics Agents*,
403 U.S. 388 (1971) ........ 1

*Brooks v. Bledsoe*,
682 F. App'x 164 (3d Cir. 2017) ........ 14

*Brown v. Philip Morris Inc.*,
250 F.3d 789 (3d Cir. 2001) ........ 10

*Bueno Diaz v. Mercurio*,
442 F. Supp. 3d 701 (S.D.N.Y. 2020) ........ 22

*Bush v. Lucas*,
462 U.S. 367 (1983) ........ 24, 27

*Carlson v. Green*,
446 U.S. 14 (1980) ........ 18, 22, 26

*Castillo–Perez v. City of Elizabeth*,
No. 11-6958 (KM), 2014 WL 1614845 ........ 17

*Cienciva v. Brozowski*,
No. 20-2045, 2022 WL 2791752 (M.D. Pa. July 15, 2022) ........ 21, 22, 24, 28

*Cofield v. U.S. D.O.J.*,
No. 15-558 (RMB), 2017 WL 1095034 (D.N.J. Mar. 23, 2017) .............................. 17

*Corbin v. Dantos*,
No. 20-CV-877, 2020 WL 3574543 n.7 (E.D. Pa. July 1, 2020) ............................ 11

*Corr. Servs. Corp. v. Malesko*,
534 U.S. 61 (2001) ........................................................................ 22, 24, 26

*Davenport v. Borough of Homestead*,
870 F.3d 273 (3d Cir. 2017)....................................................................... 8

*Davis v. Passman*,
442 U.S. 228 (1979) ..................................................................................... 18

*Davis v. Samuels*,
962 F.3d 105 (3d Cir. 2020).................................................................. 10, 13

*Edwards v. Gizzi*,
No. 20-7371, 2022 WL 309393 (S.D.N.Y. Feb. 2, 2022) ........................................ 26

*Egbert v. Boule*,
142 S. Ct. 1793 (Jun. 8, 2022)........................................................... passim

*Estate of Moore v. Cumberland Cty.*,
No. 17-2839 (RBK), 2018 WL 1203470 (D.N.J. Mar. 8, 2018)............................... 15

*Evans v. City of Newark*,
No. 14-120 (KM), 2016 WL 2742862 (D.N.J. May 10, 2016) ................................. 15

*Fowler v. UPMC Shadyside*,
578 F.3d 203 ..................................................................................................... 9

*Gardner v. New Jersey State Police*,
No. 15-898 (RBK), 2016 WL 6138240 (D.N.J. Oct. 21, 2016) ................................ 16

*Graves v. New Jersey*,
No. 16-1822 (MCA), 2018 WL 6514943 (D.N.J. Dec. 11, 2018) ............................. 11

*Greene v. Lance*,
No. 21-14399 (MAS), 2022 WL 1241309 (D.N.J. Apr. 27, 2022) ...................... 11, 12

*Hernandez v. Mesa*,
140 S. Ct. n.9 ................................................................................................ 26

*Hindes v. FDIC*,
137 F.3d 148 (3d Cir. 1998)........................................................................ 10, 11

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
264 F.3d 344 (3d Cir. 2001)................................................................................ 6

*Kornafel v. Green*,
No. 20-4687, 2020 WL 6118786 (E.D. Pa. Oct. 15, 2020) ...................................... 13

*Lake v. Arnold*,
112 F.3d 682 (3d Cir. 1997)................................................................................ 13

*Lane v. Pena*,
518 U.S. 187 (1996) ............................................................................................ 6

*Lydic v. Rotz*,
No. 05-0904, 2006 WL 680865 n.6 (M.D. Pa. Mar. 13, 2006) ................................ 16

*Mack v. Yost*,
968 F.3d 311 (3d Cir. 2020)........................................................................ 19, 20

*Mesadieu v. City of Elizabeth,*
No. 18-842 (JMV), 2019 WL 4926884 (D.N.J. Oct. 4, 2019) .................................. 12

*Mierzwa v. United States*,
282 F. App'x 973 (3d Cir. 2008) .......................................................................... 6

*Miller v. Indiana Hosp.*,
562 F. Supp. 1259 (W.D. Pa. 1983)...................................................................... 13

*Minneci v. Pollard*,
565 U.S. 118 (2012) ............................................................................................ 26

*Morales v. Cty. of Camden*,
No. 21-11961-NLH, 2022 WL 671369 (D.N.J. Mar. 7, 2022)...................... 22, 23, 26

*Mullenix v. Luna*,
136 S. Ct. 305 (2015) .......................................................................................... 8

*Murchison v. Warden Lewisburg USP*,
566 F. App'x 147 (3d Cir. 2014) .......................................................................... 8

*Nyanteng v. Thompson*,
No. 21-10390 (BRM), 2022 WL 2763552 (D.N.J. July 15, 2022) ............................ 14

*Prince v. Aiellos,*
No. 09-5429 (JLL), 2010 WL4025846 (D.N.J. Oct 12, 2010 .................................. 11

*Priovolos v. FBI*,
632 F. App'x 58 (3d Cir. 2015) .............................................................................. 6

*Santos v. United States*,
559 F.3d 189 (3d Cir. 2009)..................................................................................... 7

*Saucier v. Katz*,
533 U.S. 194 (2001) ................................................................................................ 8

*Senatus v. Lopez*, No. 20-60818,
2022 U.S. Dist. LEXIS 186621, at *12-13 (S.D. Fla. Oct. 12, 2022)................ 22, 24

*Stolinski v. Pennypacker*,
772 F. Supp. 2d 626 (D.N.J. 2011)........................................................................ 16

*Style v. Mackey*,
No. 17-1691, 2020 WL 3055319 (E.D.N.Y. June 8, 2020)................................ 22, 27

*Surina v. S. River Bd. of Educ.*,
No. 17-2173 (FLW), 2018 WL 3617970 (D.N.J. July 30, 2018) ............................. 10

*Treasurer of New Jersey v. U.S. Dep't of Treasury*,
684 F.3d 382 (3d Cir. 2012)..................................................................................... 6

*United States v. Lanier*,
520 U.S. 259 ......................................................................................................... 16

*United States v. Mitchell*,
445 U.S. 535 (1980) ................................................................................................ 5

*United States v. Sherwood*,
312 U.S. 584 (1941) ................................................................................................ 5

*Vanderklok v. United States*,
868 F.3d 189 (3d Cir. 2017).................................................................................... 28

*Webb v. Desan,*
250 F. App'x 468 (3d Cir. 2007) .............................................................................. 6

*Williams v. Reinhardt*,
No. 15-121 (MCA), 2022 WL 4449378 (D.N.J. Sept. 23, 2022).............................. 17

*Ziglar v. Abbasi*,
137 S. Ct. 1843 (2017) ........................ passim

**Statutes**

5 U.S.C. App. 3 § 5(a)(1) ........................ 25
5 U.S.C. App. 3 § 5(b) ........................ 25
5 U.S.C. App. 3 § 8E(d) ........................ 25
28 U.S.C. § 561(g) ........................ 24
28 U.S.C. § 1346(b) ........................ 7
28 U.S.C. § 2679(a) ........................ 6
28 U.S.C. § 2679(b) ........................ 7
28 U.S.C. § 2680(h) ........................ 28
42 U.S.C. § 1983 ........................ passim
42 U.S.C. § 1985 ........................ 4, 9, 12, 13
42 U.S.C. § 1985(3) ........................ 13

**Rules**

Fed. R. Civ. P. 8 ........................ 8

**Regulations**

28 C.F.R. § 0.111(n) ........................ 24

## PRELIMINARY STATEMENT

Plaintiff Judith Henry brings this action under 42 U.S.C. § 1983, suing more than twenty individuals for constitutional violations that allegedly occurred in connection with her August 22, 2019, arrest and subsequent detention. Among the defendants Henry has named are four federal law enforcement officers – Assistant Chief Deputy U.S. Marshal ("DUSM") Pedro Alvarez, former Supervisory DUSM Jerry Sanseverino, DUSM Gary Duncan, and DUSM Anthony Rossi – and two deputized members of a federal task force, Task Force Officer ("TFO") Leonard Jackson and TFO Euletia Lynn (collectively, the "Federal Defendants").

Henry's claims against the Federal Defendants in the Third Amended Complaint should be dismissed. First, the Court lacks jurisdiction over all constitutional claims brought against the Federal Defendants in their official capacity, and any tort claims asserted against them individually. Second, the Federal Defendants are entitled to qualified immunity, as Henry has failed to plausibly allege any constitutional violation under § 1983. Finally, even if the Court construes the Third Amended Complaint as attempting to bring claims under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 390 (1971), it should reject Henry's attempt to extend *Bivens* liability to the new context presented by this case because special factors counsel against recognizing a damages cause of action under these circumstances. For all of these reasons, the Court should dismiss Henry's claims against the Federal Defendants in all respects.

## BACKGROUND

I. Relevant Allegations in the Third Amended Complaint[1]

Henry alleges in the Third Amended Complaint that on July 29, 2019, Margaret E. Thompson, Director of Pennsylvania Interstate Parole Services, issued an arrest warrant for parole violations committed by a parolee named Judith Maureen Henry. *See* Third Amended Complaint ("TAC") (ECF No. 46) ¶¶ 17, 40. Thereafter, Henry states, Timothy Riegle, a parole staff technician with the Pennsylvania Board of Probation and Parole, forwarded the arrest warrant to Essex County, without reviewing all of the information relating to Judith Maureen Henry or contacting Don Young, who had sought this individual since 2000. *See id.* ¶¶ 18, 41. According to the complaint, Riegle performed a search for "Judith Henry" that produced different addresses, selected the Newark address, obtained a driver's license photo of Plaintiff, and attached the photo to the arrest warrant. *See id.* ¶ 18.

Henry alleges that on August 22, 2019, at about 7:00 a.m., TFO Jackson, TFO Lynn, Essex County Sheriff Officers Diane Munoz, Joseph Denegyolo, Janice Guy, and Naimah Marrow, and unidentified USMS employees entered her home with guns drawn as about 12 police cars surrounded the area. *See id.* ¶¶ 19, 66. According to the complaint, these officers arrested Henry without probable cause and TFO Lynn conducted a pat down search along Henry's outer garments. *See id.* ¶¶ 20, 63. Henry also alleges that the officers eventually placed her in the back of a police vehicle, and

---

[1] This section sets out facts relevant to the constitutional claims asserted against the Federal Defendants. It does not address allegations in the Third Amended Complaint regarding medical care Henry received at Essex County Correctional Facility, which do not pertain to the Federal Defendants.

drove to a second location to pick up another alleged fugitive. *See id.* ¶¶ 20, 63. Henry states that, according to an Essex County Sheriff's Office arrest report, TFO Jackson arrested her and performed a record check, Detective Diana Munoz searched Henry's person, Officer Joseph Denequolo fingerprinted her, and Captain Gary Nash approved the report. *See id.* ¶ 21.

Henry alleges she remained in custody at Essex County Correctional Facility ("ECCF") from August 22-September 1, 2019. *See id.* ¶ 20. According to Henry, on August 23, 2022, Narvin Singh of the Essex County Prosecutor's Office Extradition Unit forwarded a fax notification to Riegle (from the Pennsylvania Parole Board) advising that the Pennsylvania State Department of Corrections had ten days (until September 3, 2019) to take custody of Henry. *See id.* ¶¶ 25, 67. Henry alleges that Singh attached a date of birth that was not the Plaintiff's and failed to verify the information in the warrant with the personal identifying information of the Judith Henry who had been arrested. *See id.* ¶ 50. Four days later, Henry alleges, Riegle issued a transport order to pick her up from ECCF and bring her to the Pennsylvania State Correctional Institution at Muncy. *See id.* ¶¶ 27, 31.

Henry states that on September 1, 2019, a transportation service brought Henry to Lackawanna County Prison, and the next day she transferred to the State Correctional Institution in Muncy. *See id.* ¶¶ 32-33. Henry alleges that she remained at Muncy for three days, and during that time, Captain Savage and Lieutenant Berkley received fingerprints of the Pennsylvania parolee sought by the warrant and determined that Plaintiff Judith Henry was not the same woman. *See id.* ¶ 34.

According to Henry, she provided fingerprints at the Essex County Sheriff's Office, ECCF, and Lackawanna County Prison, and "each entity was negligent by failing to compare her fingerprints to the fugitive wanted pursuant to the warrant." *Id.* ¶ 35. The day after she arrived at Muncy, Henry alleges, she was fingerprinted by Muncy employee Elizabeth Cooper and "was told her fingerprints did not match any of the fingerprints currently in Muncy's system." *Id.* Thereafter, on or about September 5, 2022, Henry was released from Muncy and given a bus ticket back to Newark. *See id.* ¶¶ 38, 70.

Based on these events, Henry appears to assert the following claims against the Federal Defendants:

(1) Count One: abuse of process (a tort claim) against TFO Jackson, TFO Lynn, SDUSM Sanseverino, DUSM Alvarez, and DUSM Rossi;

(2) Count Two: false arrest and false imprisonment, under 42 U.S.C. § 1983, the New Jersey Tort Claims Act ("NJTCA") and the New Jersey Civil Rights Act ("NJCRA"), against all Federal Defendants;

(3) Count Three: intentional infliction of emotional distress, under § 1983, against Jackson and Lynn;

(4) Count Four: failure to supervise and train, under § 1983, against Sanseverino, Alvarez, and Rossi;

(5) Count Five: Fourteenth Amendment due process violation, under § 1983, against all Federal Defendants;

(6) Count Six: conspiracy under § 1983, against all Federal Defendants;

(7) Count Seven: conspiracy under 42 U.S.C. § 1985, against all Federal Defendants; and

(8) Count Eight: violation of due process under the NJCRA, against all Federal Defendants.

*Id.* at ¶¶ 39-125. Henry asserts all claims against the Federal Defendants in both their official and individual capacity. *See id.* at 1-2.

II. Procedural History

On August 22, 2020, Henry filed this case in federal court. In her original complaint, Henry asserted the eight counts outlined above, but named only Essex County, Lackawanna County Prison, Pennsylvania Department of Corrections, the State Correctional Institution at Muncy, and various John Doe employees of those agencies as defendants. *See* ECF No. 1. The complaint did not mention the U.S. Marshals Service.

On May 23, 2021, Henry filed an Amended Complaint that for the first time alleged that members of the USMS took part in her August 2019 arrest but did not assert any claims against USMS officers. *See* ECF No. 24-1 ¶ 9. On December 11, 2021, Henry filed her Third Amended Complaint, which for the first time asserted claims against the Federal Defendants. *See* ECF No. 46. The Federal Defendants now move to dismiss the claims against them in the Third Amended Complaint.

## ARGUMENT

I. The Court Lacks Jurisdiction Over Henry's Tort Claims and Official-Capacity Claims

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Although Congress can waive the Government's sovereign immunity, it can do so only through clear and

unequivocal statutory language. *See Lane v. Pena*, 518 U.S. 187, 192 (1996); *Beneficial Consumer Discount Co. v. Poltonowicz*, 47 F.3d 91, 93-94 (3d Cir. 1995). Accordingly, if the United States has not waived its sovereign immunity, or if the conditions under which the United States has agreed to waive that immunity have not been met, federal subject matter jurisdiction does not exist over a party's claims against the United States. *See Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 395-96 (3d Cir. 2012). The party seeking to sue the United States bears the burden of establishing that the United States has waived sovereign immunity with respect to his claims. *See In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 361 (3d Cir. 2001).

The Court should dismiss all of the constitutional claims asserted against the Federal Defendants in their official capacity. Although the Supreme Court has allowed plaintiffs in three very limited circumstances to sue a federal employee in his individual capacity for constitutional violations, *see Egbert v. Boule*, 142 S. Ct. 1793 (Jun. 8, 2022), Congress has not waived the federal government's sovereign immunity from lawsuits seeking damages based on constitutional claims. *See Mierzwa v. United States*, 282 F. App'x 973, 976-77 (3d Cir. 2008). Likewise, the United States has not waived sovereign immunity for constitutional claims for damages asserted against federal employees in their official capacity. *See Webb v. Desan,* 250 F. App'x 468, 471 (3d Cir. 2007). As such, the only appropriate defendant in an FTCA action is the United States. *See* 28 U.S.C. § 2679(a); *Priovolos v. FBI*, 632 F. App'x 58, 60 (3d Cir.

2015) (citation omitted). Accordingly, the Court lacks jurisdiction over Henry's official-capacity constitutional claims against the Federal Defendants.

The Court likewise lacks jurisdiction over the tort claims brought against the Federal Defendants in Counts One and Two.[2] The Federal Tort Claims Act, which provides the exclusive remedy for tort claims against the United States, is a limited waiver of sovereign immunity. *See Santos v. United States*, 559 F.3d 189, 193 (3d Cir. 2009). Pursuant to that statute, the United States shall be liable, to the same extent as a private party, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. §§ 1346(b), 2679(b)(1).

In this case, Henry appears to assert tort claims for abuse of process, false arrest, and false imprisonment against four U.S. Marshals Service employees and two deputized members of the USMS Regional Fugitive Task Force who were acting within the scope of their federal employment at the time of the events alleged in the complaint. *See* Scope Certification (submitted with this motion); TAC ¶¶ 3, 6, 7. Because Henry's tort claims arise out of actions allegedly taken by the Federal Defendants in the scope of their federal employment, all tort claims against the

---

[2] As noted above, Count One asserts the tort of abuse of process against TFO Jackson, TFO Lynn, SDUSM Sanseverino, DUSM Alvarez, and DUSM Rossi. Count Two asserts false arrest and false imprisonment claims under § 1983, the NJCRA, and the NJTCA against all Federal Defendants. Because the FTCA is the exclusive remedy for tort claims arising out of actions taken by individuals acting within the scope of their federal employment, Henry cannot bring NJTCA claims against the Federal Defendants.

Federal Defendants should be dismissed for lack of jurisdiction. *See, e.g.*, *Murchison v. Warden Lewisburg USP*, 566 F. App'x 147, 150 (3d Cir. 2014).

## II. The Federal Defendants Are Entitled To Qualified Immunity

The Court should also dismiss Henry's constitutional right claims because the USMS Defendants are entitled to qualified immunity.

The doctrine of qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quotation omitted). In resolving questions of qualified immunity, the Court must "conduct a two-part inquiry." *Davenport v. Borough of Homestead*, 870 F.3d 273, 280 (3d Cir. 2017). First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* (quotation omitted). Second, the Court must "consider whether, in light of the specific context of the case, the right was clearly established." *Id.* (quotation omitted) Because qualified immunity is an "immunity from suit," immunity questions ought to be resolved "at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quotation omitted). As set forth more fully below, Henry's claims against the Federal Defendants fail under both prongs of the qualified immunity analysis.

Federal Rule of Civil Procedure 8 requires that a pleading "contain a short and plain statement of the claim showing that the pleader is entitled to relief." To meet this standard, a complaint must contain "sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. *Iqbal*'s "'plausibility' standard does not require probability, but it does demand more than a sheer possibility that the defendant acted unlawfully." *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 72 (3d Cir. 2011).

A federal court evaluating a motion to dismiss must disregard any legal conclusions. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Instead, the court must determine whether the alleged facts are sufficient to show that plaintiff has a plausible claim for relief. *See id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks and citation omitted).

The Court should dismiss Henry's claims against the Federal Defendants in their individual capacities for violations of her constitutional rights because Henry has not plausibly alleged a violation of her constitutional rights by the Federal Defendants.

1. <u>Henry Has Failed to State a Claim Under 42 U.S.C. § 1983, § 1985, and the NJCRA</u>

As an initial matter, Henry has failed to state a claim against Federal Defendants under any of the three statutes on which she premises Counts Two through Eight: § 1983, § 1985, or the NJCRA.

Pursuant to 42 U.S.C. § 1983, a plaintiff may bring suit against any individual "who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects [him], or causes [him] to be subjected . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." Because § 1983 applies to individuals acting "under color of" state law, federal actors – who typically act pursuant to federal law – are generally exempt from liability under the statute. *See Hindes v. FDIC*, 137 F.3d 148, 158 (3d Cir. 1998); *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001). The same is true with respect to the NJCRA, as that statute mirrors § 1983, and "just like § 1983, a private right of action under the NJCRA requires the presence of state action." *Surina v. S. River Bd. of Educ.*, No. 17-2173 (FLW), 2018 WL 3617970, at *11 (D.N.J. July 30, 2018) (quotations omitted).

Here, the Third Amended Complaint admits that four of the Federal Defendants (Sanseverino, Rossi, Alvarez, and Duncan) are employed by the U.S. Marshals Service, a federal agency. *See* TAC at 3, ¶ 6. The TAC further admits that the remaining two Federal Defendants (Jackson and Lynn) were federal task force officers and members of the U.S. Marshals Service Regional Federal Task Force who were looking for a fugitive named Judith Henry pursuant to a Pennsylvania parole violator warrant at the time of Plaintiff's arrest. *See id.* at 3, ¶¶ 3, 7, 17-19. As federal officers, any actions taken by the Federal Defendants occurred under color of federal law, not state law, and thus may not serve as a basis for section 1983 or NJCRA claims. Accordingly, the Court should dismiss each of the section 1983 and NJCRA claims asserted against the Federal Defendants. *See Davis v. Samuels*, 962

F.3d 105, 115 (3d Cir. 2020) ("All of the defendants here, however, are alleged to be federal actors or to have acted under color of federal law, so the 1983 claim cannot stand.").

Furthermore, although Courts have allowed a plaintiff to assert a § 1983 claim against a federal employee who conspires with state officials to violate the plaintiff's constitutional rights, *see, e.g., Hindes*, 137 F.3d at 158, Henry cannot premise liability on this legal theory, because the Third Amended Complaint does not adequately allege that the Federal Defendants participated in a conspiracy to violate her constitutional rights. To state a claim for conspiracy, a plaintiff must "must make *specific* factual allegations of a combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected right." *Greene v. Lance*, No. 21-14399 (MAS), 2022 WL 1241309, at *3 (D.N.J. Apr. 27, 2022) (citation omitted) (emphasis in original). "[I]t is not enough to allege that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Prince v. Aiellos*, No. 09-5429 (JLL), 2010 WL4025846, at *7 (D.N.J. Oct. 12, 2010) (quotation omitted). Rather, the plaintiff must "provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action." *Graves v. New Jersey*, No. 16-1822 (MCA), 2018 WL 6514943, at *3 (D.N.J. Dec. 11, 2018). "[A] bare assertion of conspiracy will not suffice." *Corbin v. Dantos*, No. 20-CV-877, 2020 WL 3574543, at *3 n.7 (E.D. Pa. July 1, 2020).

In this case, Henry has failed to state a conspiracy under section 1983 because the Third Amended Complaint does not adequate allege the facts necessary to make out such a claim. Indeed, the pleading contains only three paragraphs that even mention an alleged conspiracy in connection with the Federal Defendants:

- Paragraph 43 (under Count One, Abuse of Process), which alleges that TFO Jackson, TFO Lynn, and others "engaged in a conspiracy to arrest and detain Ms. Henry and transport Ms. Henry to the State of Pennsylvania without due process";

- Paragraph 110 (under Count Six, § 1983 conspiracy), which alleges that the Federal Defendants and others "conspired to deprive Ms. Henry of her right to due process by means of an unlawful arrest, detention, and transport to the State of Pennsylvania with the intent to permanently deprive Ms. Henry of her liberty"; and

- Paragraph 117 (under Count Seven, § 1985 conspiracy), which alleges that the Federal Defendants and others "conspired to deprive Ms. Judith Henry of equal protection under the law by means of an unlawful arrest, detention, and transport to the State of Pennsylvania whereby Ms. Henry was injured because she was subjected to repeated unlawful arrests and loss of liberty".

TAC ¶¶ 42, 110, 117. These sparse and conclusory allegations provide no details as to the purported agreement to violate Ms. Henry rights or any concerted actions taken in furtherance of that agreement. Plaintiff thus may not rely on these allegations to support a section 1983 claim against the Federal Defendants based on a conspiracy with state officers. *See Greene*, 2022 WL 1241309, at *3; *Mesadieu v. City of Elizabeth,* No. 18-842 (JMV), 2019 WL 4926884, at *9 (D.N.J. Oct. 4, 2019). The Court should therefore dismiss Counts 2, 3, 4, 5, 6, and 8 as against the Federal Defendants.

The Court should reach a similar conclusion with respect to Henry's section

1985 claim. "Section 1985 contains three major subsections, each providing for the redress of somewhat different wrongs." *Miller v. Indiana Hosp.*, 562 F. Supp. 1259, 1281 (W.D. Pa. 1983). The Third Amended Complaint fails to identify a subsection, but it appears to assert a claim under § 1985(3), which concerns the deprivation of a person's rights or liberties. *See* TAC ¶ 117. "Section 1985(3) permits an action to be brought by one injured by a conspiracy formed for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *Davis*, 962 F.3d at 113. To state a claim under § 1985(3), a plaintiff must show "(1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property, or the deprivation of any right." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). "[A] plaintiff must allege specific facts in order to sustain a § 1985(3) claim[.]" *Kornafel v. Green*, No. 20-4687, 2020 WL 6118786, at *2 (E.D. Pa. Oct. 15, 2020).

Here, the Third Amended Complaint contains no specific facts to support any of these elements. As noted above, it does not provide any allegations to establish the existence of a conspiracy or acts taken in furtherance of a conspiracy. Nor does it contain any allegations regarding race- or class-based animus. Because Henry fails to allege any of the elements necessary to state a section 1985 claim, the Court should dismiss Count Seven as against the Federal Defendants. *See Andela v. Admin. Off.*

*of U.S. Cts.*, 569 F. App'x 80, 84 (3d Cir. 2014); *Nyanteng v. Thompson*, No. 21-10390 (BRM), 2022 WL 2763552, at *8 (D.N.J. July 15, 2022).

2. Henry Has Failed to State a Constitutional Violation

Henry has also failed to state a substantive constitutional violation against many of the Federal Defendants.

First, Henry has not alleged that Defendants Sanseverino, Alvarez, Rossi, or Duncan had any personal involvement in her alleged false arrest/false imprisonment. "It is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct." *Argueta*, 643 F.3d at 71. "Because vicarious liability is inapplicable to *Bivens* . . . a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Further, a plaintiff suing a supervisory official for constitutional violations may not rely on the doctrine of *respondeat superior* to establish *Bivens* liability. *See Argueta*, 643 F.3d at 71. In other words, a subordinate's wrongful conduct is not sufficient to hold a supervisor liable in a *Bivens* action. *See Iqbal*, 556 U.S. at 676; *Brooks v. Bledsoe*, 682 F. App'x 164, 169 (3d Cir. 2017). Rather, liability will only attach where the plaintiff plausibly alleges that the supervisor (1) "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm," *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quotation omitted); or (2) "participated in violating [] rights, directed

others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839 (RBK), 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

Here, although the Third Amended Complaint asserts false arrest and false imprisonment claims against Sanseverino, Alvarez, Rossi, or Duncan, the pleading does not identify any actions taken by these four USMS officers that could subject them to liability for her arrest. Henry does not allege that they participated in or were present for her August 22, 2019, arrest. Nor does she plausibly allege any of scenarios that could conceivably give rise to supervisory liability. Instead, Henry merely states that she was detained "with the assistance of" these and other individuals. TAC ¶ 53. This bare, unsupported allegation is insufficient to state a claim for false arrest or false imprisonment against these four defendants.

Second, Henry has failed to state a claim for abuse of process. Abuse of process requires "the improper, unwarranted, and perverted use of process after it has been issued ... [i.e.], the employment of a process in a manner not contemplated by law." *Evans v. City of Newark*, No. 14-120 (KM), 2016 WL 2742862, at *6 (D.N.J. May 10, 2016). "To succeed on a claim for malicious abuse of process, a plaintiff must demonstrate some coercive or illegitimate use of the judicial process." *Id.*

In this case, the Third Amended Complaint broadly alleges that the Federal Defendants improperly used, "misused," or "abused" the legal process (TAC ¶¶ 45-49), but it does not identify the process or how the Federal Defendants allegedly abused it. The "process" in an abuse of process claim "includes the 'summons,

mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders." *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 645 (D.N.J. 2011). "Process is not abused unless after its issuance the defendant reveals an ulterior purpose he had in securing it by committing 'further acts' whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff." *Gardner v. New Jersey State Police*, No. 15-898 (RBK), 2016 WL 6138240, at *3 (D.N.J. Oct. 21, 2016). Because the Third Amended Complaint makes no such allegations, Henry has failed to plausibly allege an abuse of process claim.

Third, Henry has failed to state a substantive due process claim. Henry may not assert any claims under the Fourteenth Amendment against the Federal Defendants because the Fourteenth Amendment applies to actions taken under state, not federal, law. Rather, the appropriate vehicle for alleging a due process claim against a federal official is through the Fifth Amendment's Due Process Clause. *See Lydic v. Rotz*, No. 05-0904, 2006 WL 680865, at *1 n.6 (M.D. Pa. Mar. 13, 2006). Further, even if the Court construed the pleading to raise Fifth Amendment due process claims against the Federal Defendants, they would still be subject to dismissal pursuant to the "more-specific-provision rule." Under this rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997). Thus, courts will dismiss substantive due process claims premised on an alleged false arrest, as "the

Fourth Amendment always governs claims of unlawful arrest and pretrial detention when that detention occurs before the detainee's first appearance before a court." *Williams v. Reinhardt*, No. 15-121 (MCA), 2022 WL 4449378, at *1 (D.N.J. Sept. 23, 2022) (citation omitted). Because Henry's substantive due process claim arises from her false arrest/false imprisonment allegations, the Court should dismiss Counts 5 and 8 against the Federal Defendants.

Fourth, Henry's conclusory cause of action against Severino, Alvarez, and Rossi for failure to train and supervise fails because it does not identify any specific policy, or custom, a necessary element for such a claim. *See Cofield v. U.S. D.O.J.*, No. 15-558 (RMB), 2017 WL 1095034, at *7 (D.N.J. Mar. 23, 2017) (rejecting failure to supervise and train claim as factually deficient); *Castillo–Perez v. City of Elizabeth*, No. 11-6958 (KM), 2014 WL 1614845, at *7 (legal boilerplate, without identifying a specific policy or custom or manner in which training fell short, fails to state a claim claim.). The Court should therefore dismiss this count as well.

Finally, even if the Court were to find that the Third Amended Complaint stated a claim for relief, the Federal Defendants would still be entitled to qualified immunity, because Henry has not plausibly alleged that they violated clearly established law. For all of these reasons, the Court should grant the Federal Defendants' motion and dismiss all constitutional claims asserted against them in the Third Amended Complaint.

III. The Court Should Not Extend *Bivens* to the Constitutional Claims Asserted Against the Federal Defendants in the Third Amended Complaint

If the Court construes Henry as raising (or allows Henry to raise) *Bivens* claims against the Federal Defendants, they should be dismissed. Henry seeks damages from the Federal Defendants for allegedly violating her constitutional rights in connection with her arrest on a parole violator warrant. The Court should dismiss these claims because the Supreme Court has never recognized a *Bivens* remedy in the circumstances presented here and the Court should not expand the *Bivens* remedy to this new context.

The Supreme Court "has made clear" that not every constitutional violation alleged against a federal officer gives rise to an implied damages action and "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). In fact, the Court has recognized a *Bivens* remedy only three times: (1) *Bivens* itself, which involved "a claim against Federal Bureau for Narcotics agents for handcuffing a man in his own home without a warrant"; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which inferred a damages remedy under the Fifth Amendment for a congressional staff member to sue a Congressman for gender discrimination; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), which inferred a damages remedy under the Eighth Amendment for federal inmates who allege that medical staff were deliberately indifferent to serious medical needs. *Abbasi*, 137 S. Ct. at 1860. "These three cases – *Bivens*, *Davis*, and *Carlson* – represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855. The Supreme Court's decision in

"*Abbasi* reflect[s] a 'notable change' in the Supreme Court's attitude toward creating an implied damages remedy directly from the Constitution." *Mack v. Yost*, 968 F.3d 311, 317 (3d Cir. 2020) (citations omitted).

Since *Abbasi*, the Supreme Court has further restricted courts from expanding *Bivens.* Earlier this year, the Supreme Court stated in *Egbert v. Boule* that "creating a cause of action is a legislative endeavor," "the Judiciary's authority" to create a *Bivens* remedy is "at best, uncertain," and if it "were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert*, 142 S. Ct. at 1802-1803, 1809 (citation omitted). However, "rather than dispense with *Bivens* altogether," the Court in *Egbert* retained the familiar analytic two-step framework set forth in *Abbasi*: first, courts must ask whether the case presents "a new *Bivens* context" and, if so, whether there are "'special factors' indicating that the Judiciary is *at least arguably* less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1803 (emphasis added). The Court reiterated: "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts[.]" *Id.* at 1800.

If "[a] case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Abbasi*, 137 S. Ct. at 1859. This "new-context inquiry is easily satisfied," and "even a modest extension is still an extension." *Id.* at 1864, 1866. Some "examples of new contexts" include, but are not limited to, "a case that involves a 'new category of defendants,'" *Egbert*, 142 S. Ct. at 1803, "the rank of the officers involved; the constitutional right at issue; the generality or specificity of

the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; [and] the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Abbasi*, 137 S. Ct. at 1860. "Unless the Supreme Court has recognized the context before, the context is 'new' and a special factors inquiry is required to determine if *Bivens* expansion is appropriate." *Mack*, 968 F.3d at 319.

If the case presents a new context, the court must "evaluate *any* grounds that counsel against *Bivens* relief," regardless of when – or even if – the argument is raised. *Egbert*, 142 S. Ct. at 1806, n. 3 (emphasis added). These two steps "often resolve to a single question: whether there is *any* reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 1803 (emphasis added). So long as there is "*any* rational reason (even one)" to defer to Congress's judgment, *id.* at 1805, "a court may not recognize a *Bivens* remedy," *id.* at 1803.

### A. Henry's Claims Present a New Context

Here, turning to the first step of the *Abbasi* analysis, Henry's claims against the Federal Defendants present a new context. Henry seeks to sue the Federal Defendants under the Fourth and Fourteenth Amendments for allegedly subjecting her to false arrest and false imprisonment in connection with her arrest on a parole violation warrant, conspiring to engage in the unlawful arrest, and/or failing to train or supervise others who participated in these actions. Her proposed causes of action

present very different circumstances from the three cases in which the Supreme Court has recognized a *Bivens* remedy.

Neither *Davis*, which involved a sex discrimination claim under the Fifth Amendment, nor *Carlson*, which involved a claim of medical misconduct under the Eighth Amendment, bear even close resemblance to Henry's claims against the Federal Defendants. This leaves *Bivens* itself. Although Henry's claims and the claim in *Bivens* involve alleged violations of the Fourth Amendment, one claim may still differ meaningfully from another even if both assert a violation of the same constitutional right. *Abbasi*, 137 S. Ct. at 1859. Indeed, the *Egbert* plaintiffs brought a Fourth Amendment excessive force claim, *see* 142 S. Ct. at 1805, and the *Abbasi* plaintiffs also sued under the Fourth Amendment, *see* 137 S. Ct. at 1853-54; however, according to the Supreme Court, even if a case where there are arguably "almost parallel circumstances" or a "similar 'mechanism' of injury,' . . . these superficial similarities are not enough to support the judicial creation of a cause of action." *Egbert*, 142 S. Ct. at 1805 (citing *Abbasi*, 137 S. Ct. at 1859).

Given the Supreme Court's broad application of a "new context," Henry's claims against the Federal Defendants – which seek to sue USMS employees and members of a federal fugitive task force for actions taken while executing a parole violator arrest warrant – involve a new category of defendants and present a new context. "[T]he presence of a warrant is a crucial difference in the *Bivens* new-context analysis because the legal mandate under which defendants were operating diverges from the warrantless narcotics-investigation circumstances in *Bivens*." *Cienciva v.*

*Brozowski*, No. 20-2045, 2022 WL 2791752, at *9 (M.D. Pa. July 15, 2022) (citing cases); *Morales v. Cty. of Camden*, No. 21-11961-NLH, 2022 WL 671369, at *4 (D.N.J. Mar. 7, 2022) ("[t]he existence of a lawful warrant for the initial search and the execution of that warrant . . . places this case well out of the ambit of *Bivens*"); *but see Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 708 (S.D.N.Y. 2020)). Moreover, permitting Henry relief in this case would require extending *Bivens* beyond Federal Bureau of Narcotics agents to a "new category of defendants." Since *Carlson,* the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). Here, the defendants at issue are deputized task force officers and employees of the USMS, "a force principally engaged in the protection of federal judicial process and the execution of warrants authorized by a judicial officer[,]" and very different from the federal narcotics agents involved in *Bivens*. *Style v. Mackey*, No. 17-1691, 2020 WL 3055319, at *4 (E.D.N.Y. June 8, 2020). Because the Supreme Court has not recognized a *Bivens* remedy under these circumstances, the Court should conclude that Henry's claims against the Federal Defendants present a "new context." *See Cienciva*, 2022 WL 2791752, at *9 (excessive force claim against USMS officers executing arrest warrant to arrest a fugitive presented new context); *Senatus v. Lopez*, No. 20-60818, 2022 U.S. Dist. LEXIS 186621, at *12-13 (S.D. Fla. Oct. 12, 2022) (excessive force claims against sheriff county deputies, deputized as USMS Fugitive Task Force Officers, arresting a fugitive pursuant to a warrant presented

"new context"); *Morales*, 2022 WL 671369, at *4 (D.N.J. Mar. 7, 2022) (unlawful detention claims against USMS officers executing warrant presented new context).

B. Special Factors Counsel Hesitation Against Extending *Bivens* to Henry's Claims

Under step two of *Abbasi* analysis, before engaging in the "disfavored judicial activity" of extending a *Bivens* remedy to new contexts, courts must consider whether: (1) there is "any alternative, existing process for protecting the injured party's interests" or (2) there exists other "special factors counselling hesitation in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857-58. If there is "*any* rational reason (even one)" to defer to Congress's judgment or "if there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate'" or "even . . . the '*potential'* for such consequences, a court cannot afford a plaintiff a *Bivens* remedy.'" *Egbert*, 142 S. Ct. at 1805 (internal citations omitted) (emphasis in the original). In this case, both alternative existing processes and other special factors counsel hesitation.

1. Alternative Remedial Processes

As the Supreme Court has made clear, "[i]f there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Abbasi*, 137 S. Ct. at 1858). "Importantly, the relevant question is not whether a *Bivens* action would 'disrup[t]' a remedial scheme, or whether the court 'should provide for a wrong that would otherwise go unredressed[.]'" *Id.* (citations omitted). "Nor does it matter that 'existing remedies do not provide complete relief.'"

*Id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 388 (1983)). A "court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies 'should be augmented by the creation of a new judicial remedy.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Bush*, 462 U.S. at 388). And, as *Egbert* reiterated, courts may "not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Id.* (quoting *Abbasi*, 137 S. Ct. at 1858).

Here, Henry had access to alternative remedial processes because she had the ability to register a complaint with the USMS or the Department of Justice. The Supreme Court has twice concluded that the ability to file a complaint through an internal grievance process qualifies as an alternative remedial measure weighing against an extension of *Bivens* includes. *Malesko*, 534 U.S. at 74 (BOP Administrative Remedy Program); *Egbert*, 142 S. Ct. at 1806–07 (DHS grievance process).

Like DHS, USMS has a robust administrative process to address employee misconduct, including alleged violations of the law. *See Cienciva*, 2022 WL 2791752, at *10 (concluding "an alternative available remedy exists for [the plaintiff] within the legal mandates of the United States Marshals Service, in much the same way the Court concluded one existed for Boule [in *Egbert*]") (citation omitted); *Senatus*, 2022 U.S. Dist. LEXIS 186621, at *14 (same). Pursuant to 28 U.S.C. § 561(g) and 28 C.F.R. § 0.111(n), the Director of the USMS "shall direct and supervise all activities of the [USMS] . . . [including the] investigation of alleged improper conduct on the part of U.S. Marshals Service personnel." *Id.* Accordingly, USMS personnel may be

subjected to discipline, including removal from office, for acts of misconduct. In addition, the USMS's Office of Professional Responsibility, Internal Affairs ("OPR") "ensures accountability and integrity of [USMS] programs, personnel, and financial activities . . . [and] ensures all allegations of misconduct and integrity violations are analyzed and investigated in compliance with the Department of Justice (DOJ) and [USMS] policies and procedures." *See* https://www.usmarshals.gov/oi. Any member of the public may seek redress for allegations of misconduct by USMS personnel directly through OPR's comprehensive administrative system. *See id.*

In addition to OPR, Congress has already provided a process to address allegations of misconduct by DOJ employees and thereby deter such misconduct. Through the Inspector General Act of 1978, as amended, the USMS is also subject to oversight by DOJ's Office of Inspector General to address complaints of misconduct, to include civil rights violations. 5 U.S.C. App. 3 § 8E(d). Any person, including the Plaintiff, may report such alleged misconduct. *See generally* https://oig.justice.gov/.[3] The Inspector General Act requires Inspector Generals – including that of DOJ – to prepare semiannual reports to Congress of "significant problems, abuses, and deficiencies" related to the administration of DOJ's "programs and operations." 5 U.S.C. App. 3 § 5(a)(1); *id.* § 5(b). Through such provisions, Congress has already taken steps to receive information regarding substantiated misconduct at DOJ,

[3] *See also* https://oig.justice.gov/hotline/submit_complaint (complaints); https://oig.justice.gov/hotline (telephonic hotline).

enabling Congress to conduct its own inquiries and enact any laws or provide any remedies it deems fit to address misconduct by DOJ employees. These processes preclude the creation of a judicially-implied *Bivens* remedy. *See Egbert*, 142 S. Ct. at 1807 (holding if "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a Bivens remedy"); *see also Abbasi*, 137 S. Ct. at 1862 (acknowledging that DOJ OIG investigation counseled against *Bivens* remedy).

Moreover, Henry has additional alternative avenues for relief through which she can seek damages, including state tort suits and the FTCA. Although the Supreme Court stated in 1980 that "Congress did not intend to limit [the plaintiff] to an FTCA action" to displace an otherwise appropriate *Bivens* action for the prison officials' denial of emergency medical care, *Carlson*, 446 U.S. at 20-23, it more recently noted that state tort law can provide an "alternative means for relief" cautioning against judicial creation of a damages remedy. *Abbasi*, 137 S. Ct. at 1858 (citing *Malesko*, 534 U.S. at 73-74 and *Minneci v. Pollard*, 565 U.S. 118, 127-30 (2012)); *cf. Hernandez*, 140 S. Ct. at 748 n.9. Thus, after *Abbasi*, some courts have found the availability of potential FTCA relief among the factors that can counsel against extending *Bivens*. *See Morales v. Cnty. of Camden*, No. 21-1196 (NLH), 2022 WL 671369, at *4 (D.N.J. Mar. 7, 2022); *Edwards v. Gizzi*, No. 20-7371, 2022 WL 309393, at *8-9 (S.D.N.Y. Feb. 2, 2022). The Court should likewise find the

availability of the FTCA in conjunction with state tort law and other alternative remedies among the many reasons here to decline extending *Bivens*.

2. Additional Factors Counseling Hesitation

Separation-of-powers principles also weigh against recognizing any cause of action extending *Bivens* to Henry's claims. When evaluating whether to recognize an implied private right of action in a new *Bivens* context, the issue is not *whether* there should be a remedy for the alleged conduct, but "who should decide" whether a damages remedy should exist: Congress or the Courts. *See Abbasi*, 137 S. Ct. at 1857 (citing *Bush*, 462 U.S. at 380). "The answer," according to *Abbasi* and *Egbert*, "most often will be Congress." *Id.* (quotation omitted)); *see also Egbert,* 142 S. Ct. at 1803 (quotation omitted).

Creating *Bivens* remedies in this new context would require courts to weigh the costs and benefits of litigation for constitutional claims incident to an arrest pursuant to a warrant. "[T]he precise manner in which defendants may lawfully execute an arrest warrant is ill-suited for judicial guidance." *Style*, 2020 WL 3055319, at *4. Inferring a damages remedy in this context would require judicial second-guessing of law enforcement officers' judgments in effecting lawful arrests and the manner in which they apprehend potentially dangerous fugitives.

Recognizing claims against the Federal Defendants would also negatively impact government operations and have a chilling effect on the ability of officers to perform their functions, particularly in this context involving regional fugitive task force operations requiring coordination between federal and local law enforcement. Indeed, the Supreme Court has acknowledged the significant impact of a potential

*Bivens* remedy on government operations. *See Abbasi*, 137 S. Ct. at 1858. Law enforcement officers attempting to arrest fugitives must make "real-time and often difficult judgment calls" to effectuate the arrest in a safe manner for themselves, the arrestee, and the public. The threat of personal damages liability could increase the probability that members of a fugitive task force "would hesitate in making split-second decisions" about potentially dangerous fugitives. *Vanderklok v. United States*, 868 F.3d 189, 207 (3d Cir. 2017); *cf. Cienciva*, 2022 WL 2791752, at *11. This threat may also jeopardize the vital collaboration between law enforcement partners on a fugitive task force.

Finally, the fact that Congress has declined to create a damage remedy for the claims raised by Henry despite legislating in this area weighs against extending *Bivens* to this new context. By enacting legislation like the FTCA, Congress has recognized the need for compensation when federal law enforcement officers cause harm. *See, e.g.,* 28 U.S.C. § 2680(h). But Congress has never authorized a damages remedy for constitutional violations against individual employees of the USMS or deputized task force officers. This Congressional refusal has not been "inadvertent" and warrants judicial restraint. *Abbasi*, 137 S. Ct. at 1843. For this reason as well, the Court should decline to create a *Bivens* remedy in this new context.

## CONCLUSION

For the reasons set forth above, the Federal Defendants respectfully request that the Court dismiss Henry's claims against them in all respects.

Dated: Newark, New Jersey
November 18, 2022

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By: *s/Brooks E. Doyne*
BROOKS E. DOYNE
Assistant United States Attorney
*Attorneys for Federal Defendants*